### LOGAN COAL & TIMBER ASS'N v. HELVERING, Com'r of Internal Revenue.

### No. 7642.

Circuit Court of Appeals, Third Circuit.

Sept. 24, 1941.

---

[35] Quoted above.

[36] See Hearings Before Committee on Ways and Means, 74th Cong., 2d Sess., 1936 on H.R. 12395, pp. 357–369.

Charles S. Jacobs and E. Spencer Miller, both of Philadelphia, Pa. (William R. Spofford, of Philadelphia, Pa., and Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., on the brief), for petitioner.

A. F. Prescott, Sp. Asst. to Atty. Gen. (Samuel O Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

This case raises the question whether the income of the taxpayer for the years 1934, 1935, 1936 and 1937, upon which the Commissioner seeks to impose a surtax as undistributed income of a personal holding company, constituted rents or mineral royalties. If it constituted rents it was not subject to the surtax by virtue of the express provisions of Section 351 of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev. Acts, page 757, and Sections 351, 352 and 353 of the Revenue Act of 1936, as amended by the Revenue Act of 1937, 26 U.S.C.A. Int.Rev. Acts, pages 936, 938, 939, since it comprised more than 50% of the taxpayer's gross income for each of the years in question. If on the other hand it constituted mineral royalties it was subject to the surtax under the language of both acts, the taxpayer's deductions under Section 353(h) not constituting 15% of its gross income. The Board of Tax Appeals held the income to be mineral royalties and therefore taxable. The taxpayer thereupon brought the case here for review.

The facts are fully set out in the findings and opinion of the Board (42 B.T.A. 529) and need not be detailed here. Suffice it to say that the income in question constituted monthly payments made to the taxpayer by the lessees of its coal lands, which payments, in accordance with the terms of the leases, were computed on a tonnage basis for the coal mined during the preceding month. While the leases provided for certain minimum annual royalties all payments in excess of the amounts due for coal actually mined might be applied to coal mined in subsequent years. The leases contained the usual provisions authorizing the lessees to mine coal, to manufacture coke and other products of coal, and to conduct a general mercantile business on the leased land, with the privilege of using the surface of the land and so much of the timber, stone, sand, clay and water found thereon as might be necessary in connection with the operations contemplated by the leases. The lessees were also given the right to transport through and under the leased land coal of the lessees

mined on adjacent properties. The lessees carried on coal mining operations on the leased lands as contemplated and in connection therewith also transported through the leased lands coal from adjoining mines.

We think that the Board of Tax Appeals was right in holding the income in question to be mineral royalties rather than rents. While the word "rent" is often used, as it was in the leases here involved, in a sense broad enough to include such payments, it must be remembered that we are here dealing with a statutory provision which differentiates rents from royalties. We must, therefore, look for the distinction which Congress intended to make between the two words. That distinction is, we think, the commonly accepted one that rent is a compensation for the right to use property which is fixed and certain in amount and payable periodically over a fixed period regardless of the extent of the use of the property,[1] while royalty is a compensation for the use of property which is based as to amount entirely upon the use actually made of the property.[2] As applied to coal mining property the difference between leases providing for the two types of compensation was well stated in Vandalia Coal Co. v. Underwood, 60 Ind.App. 675, 111 N.E. 329, 330, as follows: "The coal industry, however, seems to recognize two general classes of mining leases: First, the lease which requires the lessee to pay the lessor a certain amount of money at stated intervals as a 'dead rent,' irrespective of the productiveness of the mine; second, the payment of royalty on the quantity of mineral mined, with the requirement that a stipulated amount be mined within a stated period of time, or, upon failure to do so, to pay a certain amount of money equal to the income that would have been received by the landowner had the mineral been mined." See also Raynolds v. Hanna, 6 Cir., 55 F. 783, at page 800, in which Circuit Judge Jackson said that "'royalty' * * * is perhaps the most appropriate word where rental is based upon the quantity of coal or other mineral that is or may be taken from the mine."

Stratton's Independence v. Howbert, 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285; Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460; and United States v. Biwabik Mining Co., 247 U.S. 116, 38 S.Ct. 462, 62 L.Ed. 1017, cited by the taxpayer, are not authority for its contention that its income constituted rents and not royalties. As pointed out in Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, they dealt with the question whether payments of the character involved here were income to the lessor or a return of capital to him. In determining that question it made no difference whether they were considered as rents or as royalties, since either would be income to the lessor.

The taxpayer points out that in addition to the right to mine coal the leases gave its lessees the right to use the surface of the leased lands in connection with their mining operations and to transport other coal through and under the leased lands. It urges that a portion, at least, of the income received from the lessees must be held to be rental for these uses. No separate rental was stipulated for these rights, however, and they, therefore, constituted merely an additional consideration for the payment by the lessees of the royalties for the coal mined which, for the reasons we have indicated, must be held to be royalties and not rents.

We are not impressed with the taxpayer's argument that its case does not come within the spirit of those provisions of the Revenue Acts which levy the surtax upon the undistributed net income of personal holding companies. The test laid down by Section 353(h) of the Revenue Act of 1936, as amended, for a corporation in the situation of the taxpayer is whether its allowable expense deductions, other than compensation for personal services rendered by shareholders, constituted at least 15% of its gross income. If so it is to be regarded as an operating rather than a holding company. The taxpayer was unable to meet this test.

The taxpayer having failed to file a return as a personal holding company on

---

[1] Western Union Tel. Co. v. American Bell Tel. Co., 1 Cir., 125 F. 342, 348; Miller v. Carr, 137 Fla. 114, 188 So. 103, 106; National Subway Co. v. City of St. Louis, 169 Mo. 319, 69 S.W. 290, 294.

[2] Western Union Tel. Co. v. American Bell Tel. Co., supra; Miller v. Carr, supra; Riley Stoker Corp. v. Jeffrey Mfg. Co., 62 Ohio App. 199, 23 N.E.2d 519, 521.

Form 1120H as required by Article 351(8) of Treasury Regulations 86 and 94, the Commissioner imposed upon it the penalty of 25% provided for by Section 291 of the Revenue Acts of 1934 and 1936, 26 U.S.C.A.Int.Rev. Code, § 291. The taxpayer urges that since it acted in good faith it should not be subjected to this penalty. The penalty is made applicable to personal holding companies by Section 351(c) of both acts, which section also supports the regulations requiring the return. Under the law and regulations the imposition of the penalty was mandatory and the Board of Tax Appeals was right in so deciding. O'Sullivan Rubber Co. v. Commissioner, 2 Cir., 120 F.2d 845. Our recent case of Girard Investment Co. v. Commissioner, 3 Cir., 122 F.2d 843, is not authority to the contrary, since in that case the taxpayer did file a return on Form 1120H which, although late, was filed before the penalty was imposed.

The decision of the Board of Tax Appeals is affirmed.