**OLD DOMINION STEVEDORING COR-PORATION, Appellant,**

v.

**POLSKIE LINIE OCEANICZNE, Appellee.**

**John H. NEWBY, Appellant,**

v.

**POLSKIE LINIE OCEANICZNE, Appellee.**

**Nos. 10102, 10103.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 9, 1965.

Decided Aug. 2, 1967.

Rehearing Denied in No. 10103 Dec. 18, 1967.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant in No. 10,102.

C. Arthur Rutter, Jr., Norfolk, Va. (Amato, Babalas, Breit, Cohen, Rutter & Friedman, Norfolk, Va., on brief), for appellant in No. 10,103.

A. Jackson Timms and Charles R. Dalton, Jr., Norfolk, Va. (Harry E. McCoy and Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and MAXWELL, District Judge.

BOREMAN, Circuit Judge.

Plaintiff John Newby brought a civil action against Polskie Linie Oceaniczne for damages for personal injuries sustained by him while working as a longshoreman aboard the defendant's vessel M/V LELEWEL. Jurisdiction was grounded on diversity of citizenship and amount involved. The complaint was based on unseaworthiness and negligence. Defendant shipowner impleaded Newby's employer, Old Dominion Stevedoring Corporation, seeking complete indemnity, costs, and attorneys' fees. Plaintiff's negligence count was dismissed on his own motion. The case was submitted to a jury on the unseaworthiness count and the jury rendered a verdict against the shipowner in the amount of $4,000.00. Plaintiff appeals on the ground that the verdict was grossly inadequate and seeks a new trial on the sole issue of damages.

The impleader action was not submitted to the jury. Instead the court directed a verdict on motion of shipowner against Old Dominion for indemnifica-

tion, holding that if the shipowner were found liable to plaintiff it followed as a matter of law on the evidence here that Old Dominion should indemnify the shipowner. Judgment was entered on the jury's verdict and the court then entered judgment for the shipowner against the stevedore in the amount of $7,320.39—$4,000.00 representing plaintiff's verdict and $3,320.39 representing costs and attorneys' fees. Old Dominion appeals from this decision. We affirm.

On February 1, 1964, longshoreman Newby was a "gang-header," in charge of a group of eight longshoremen assigned to unload cargo from the vessel, LELE-WEL, docked in Norfolk. They were to begin by unloading an automobile and two large cartons from No. 2 'tween-deck and then to discharge cargo from No. 2 lower hold. A shipment of large drums of syrup had been discharged from this No. 2 'tween-deck when the vessel was in New York and during that operation one drum which had been damaged in passage spilled syrup on the 'tween-deck. The vessel's crew had attempted to clean this area and to cover any slippery spots with sawdust. However, the substance had accumulated under the cargo remaining to be discharged and was not discovered until Newby and his co-workers began unloading operations. The "hatch-boss" in charge of all longshoremen assigned to the No. 2 hatch was Worth Wilson. The "foreman" in charge of all longshoremen then working the vessel was Aubrey Holland.

Newby, hatch-boss Wilson, and another longshoreman, Sam Scott, Jr., testified that they noticed a slippery substance on the 'tween-deck when they began the unloading operation. They stated that the longshoremen were slipping in it and had discussed the situation among themselves. Newby testified that upon noticing the substance he complained to Wilson. However, the work was not stopped because, in Wilson's opinion, it did not seem to present a situation of danger. Wilson also stated that, since only a few pieces of cargo had to be unloaded from that area, he did not think it was necessary to stop the work and request the shipowner to remove the substance. However, foreman Holland stated that he did not enter or make any inspection in No. 2 hatch prior to Newby's accident, but that if he had been aware of the presence of the syrup he would have stopped the operation and ordered its removal. In addition, Wilson admitted that he had authority to order that the unloading operation be stopped and that the syrupy substance be removed.

After the cargo from No. 2 'tween-deck had been discharged, Newby began to descend a vertical ladder to the lower hold. He slipped and fell about fifteen feet, landing upon some logs at the foot of the ladder. Wilson testified that there was a substance on Newby's shoes identical with the slippery substance on the floor of the 'tween-deck. However, foreman Holland and an officer of the vessel testified that they had examined the bottoms of Newby's shoes following his fall and that they were clean; also, that the ladder was clean and dry. Newby suffered fractures of the second, third and fourth lumbar transverse processes on the left side, and a bruised left kidney. He spent twenty-one days in the hospital. In August 1964 he returned to farming which was his usual occupation. Prior to his accident he had worked nine or ten months as a longshoreman, whenever he could obtain such employment, earning $95.23 per week. His medical expenses were stipulated to be $914.40. Asserting that his special damages, including loss of wages, were $3,411.18, he argues that, since he was under a doctor's care for a long period and because he experienced considerable pain and suffering, the sum of $588.82—the difference between his special damages and the verdict—was grossly inadequate. At trial defendant shipowner disputed the seriousness of Newby's injuries.

In the District Court Newby did not make a motion to have the verdict set aside and for a new trial on the grounds that the verdict was inadequate. He attacks no ruling, action or omission of the District Court and appeals on the sole

ground that the jury's verdict was inadequate.

■ The question of the amount of damages is one of fact to be resolved by the jury and cannot be reexamined in the court of appeals. St. Louis Southwestern Railway Co. v. Ferguson, 182 F.2d 949, 954–956 (8 Cir. 1950); Sanders v. Leech, 158 F.2d 486, 487 (5 Cir. 1946). This is not to say, however, that the jury's determination of the quantum of damages may never be reviewed by the appellate court where the question is properly presented. The jury's authority to fix the amount of damages is not arbitrary or unlimited. DeFoe v. Duhl, 286 F.2d 205, 207 (4 Cir. 1961). Contentions that the jury has abused or exceeded its authority must be addressed to the sound discretion of the trial court upon motion to set aside the verdict and for a new trial. Appeal may be taken after entry of judgment on the ground that the court's disposition of such motion constituted an abuse of discretion.

Since the plaintiff failed to raise the issue properly in the District Court there is no question of law for this court to decide, and the verdict will not be disturbed.

■ We next consider Old Dominion's appeal from the court's entry of a directed verdict against it on the issue of indemnity. It is the stevedore's contention that the shipowner brought about the defect which caused plaintiff's injury and since it was aware of such defect the stevedore should not be made to indemnify the shipowner. It is also argued that the jury should have passed on the issue of whether the stevedore failed to perform its operation in a workmanlike manner.

In Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), a third-party suit by a shipowner seeking indemnity from a stevedore, the Supreme Court stated that if a stevedore rendered a substandard performance of his contract with the shipowner "the latter was entitled to indemnity absent conduct on

its part sufficient to preclude recovery." 355 U.S. at 567, 78 S.Ct. at 441.

In *Weyerhaeuser*, a longshoreman had recovered against the shipowner for injuries suffered when he was struck by a board which fell into a hold where he was working. The injury occurred in Boston. The board fell from a winch shelter erected by the same stevedore in New York, five days prior to the accident. After the jury had found for the longshoreman the court directed a verdict for the stevedore in the indemnity action. The Supreme Court reversed, stating that the evidence concerning the stevedore's use of the shelter and its failure to inspect it for five days were questions for the jury's determination.

Subsequently, in Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), the Supreme Court held that a shipowner whose vessel's unseaworthiness had injured a longshoreman was entitled to indemnification by the stevedore if the stevedore's action brought the unseaworthiness into play. 358 U.S. at 429, 79 S.Ct. 445.

This court has followed and applied these decisions. American Export Lines, Inc. v. Atlantic and Gulf Stevedores, Inc., 313 F.2d 414 (4 Cir. 1963); Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., 311 F.2d 663 (4 Cir. 1962); Rederi A/B Dalen v. Maher, 303 F.2d 565, 566 (4 Cir. 1962); Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176, 180 (4 Cir. 1960); Calmar Steamship Corp. v. Nacirema Operating Co., 266 F.2d 79, 80 (4 Cir. 1959); American Export Lines, Inc. v. Revel, 266 F.2d 82 (4 Cir. 1959).

In Smith v. Jugosalvenska Linijska Plovidea, supra, the plaintiff, a longshoreman, was thrown from a ladder which had several bolts missing from it. The stevedore's safety man observed that the bolts were missing but thought that the ladder was safe because he had seen other longshoremen use it prior to plaintiff's injury. We there noted that the stevedore's standard of performance was to do the job properly and safely and

concluded "[t]his standard is not met when Stevedores' safety man is placed on notice that a bolt type ladder, which is to be used by the longshoremen to gain access to a place of work, is not secured by bolts." 278 F.2d at 180.

The Second Circuit, in Albanese v. N. V. Nederl. Amerik Stoomv. Maats, 346 F.2d 481 (2 Cir. 1965), has applied the Supreme Court's decision in *Weyerhaeuser* to a situation in which the stevedore became aware of the presence of monoxide gas fumes in an area where its men were working. The stevedore asked that the ship's blowers be turned on to ventilate the area but did not stop its men from working in the area. The court instructed the jury that the stevedore's request for ventilation was sufficient to absolve the stevedore. The court of appeals found such instruction to be error, holding "[w]hatever fault of a shipowner may be said to relieve the stevedore of his duty under the warranty, it seems plain that it must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job. Merely concurrent fault is not enough." 346 F.2d at 484.

These cases are controlling of the case at bar. It is undisputed that the stevedore had knowledge of the unseaworthy condition and did nothing to remedy it despite its opportunity to do so. The stevedore permitted its men to work in the hold after it knew of the presence of the syrup and this set the unseaworthy condition into play. Certainly the shipowner did nothing to prevent or handicap the stevedore from discharging its duties. It would have been a simple matter to stop the work and permit the shipowner to remove the syrup.

Thus it is clear that the law permits a stevedore to be held liable to indemnify the shipowner where it has knowledge of an unseaworthy condition or brings such conditions into play.

The only remaining question is whether the court was justified in directing a verdict for the shipowner against the stevedore.

The test to be applied in determining whether a motion for a directed verdict should be granted has been stated by the Supreme Court as follows:

"When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict." Brady v. Southern Ry. Co., 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

This has been generally approved and followed. See 5 Moore's Federal Practice ¶ 50.02, p. 2320–2325 (2d ed. 1966), and cases cited therein. We are not unmindful of the well-recognized principle that upon such motion the nonmoving party is entitled to have the evidence viewed in a light most favorable to it and to the benefit of every inference that may reasonably be drawn therefrom. Richmond Television Corporation v. United States, 354 F.2d 410, 414 (4 Cir. 1965).

In applying these principles to the instant case we reach the conclusion that the court was correct in directing a verdict for the shipowner against the stevedore. Three witnesses, all employees of Old Dominion, testified clearly and without equivocation that they observed a sticky substance on the deck where they were working. One of these, Wilson, admitted that he possessed the authority to have the work stopped and to order the substance removed. Applying the law as discussed above, we are of the firm opinion that there could have been only one reasonable conclusion as to the verdict. The credibility of these witnesses was not in question. Giving the stevedore the benefit of every inference that may reasonably be drawn from the evidence we are still left with the inescapable conclusion that its knowledge of the presence of the slippery substance on the deck of the hold rendered it liable for failure to perform its job properly and safely, and in breach of its implied warranty

of performance of its undertaking in a workmanlike manner. There was no factual controversy which the jury had to decide for the facts were clear and undisputed.

█ The shipowner seeks to have this court award it attorneys' fees for the expense of defending Newby's appeal in this court and to charge such to the stevedore. The stevedore is obligated to indemnify the shipowner for any loss caused by its breach of its warranty of workmanlike service, including attorneys' fees and other litigation expenses. Rederi A/B Dalen v. Maher, supra, 303 F.2d at 566, and cases cited therein.

█ While a shipowner may not recover his expenses in defending the stevedore's appeal, American Export Lines, Inc. v. Norfolk Shipbuilding and Drydock Corp., 336 F.2d 525, 527 (4 Cir. 1964), Misurella v. Isthmian Lines, Inc., 328 F.2d 40, 42 (2d Cir. 1964), there is authority for permitting shipowner to recover the expenses of defending an injured longshoreman plaintiff's appeal in which he complains that his damages are inadequate. In Nicroli v. Den Norske Afrika, 332 F.2d 651 (2d Cir. 1964), the court awarded attorneys' fees to the shipowner who, in addition to defending the stevedore's appeal, was also required to defend the plaintiff's appeal based on the ground that his damages were inadequate. After holding that the shipowner was not entitled to expenses incurred in defending the stevedore's appeal, the court stated: "However, here a good portion of the shipowner's brief is devoted to resisting the plaintiff's efforts to increase his recovery, and the shipowner is to that extent entitled to reimbursement." 332 F.2d at 656.

█ In the instant case the shipowner has been burdened with the defense of plaintiff's meritless appeal and he is entitled to recover from the stevedore an attorneys' fee which, under the circumstances, is fixed by this court in the amount of $500.00.

Affirmed.

## ADDENDUM TO OPINION
## ON PETITION FOR REHEARING

In a petition for rehearing filed by Newby, the court's attention is directed to a factual misstatement and the conclusion based thereon in the foregoing opinion. It was there stated that Newby made no motion in the District Court to set aside the verdict and to grant a new trial and that his appeal was based solely upon the ground of inadequacy of the jury verdict. We acknowledge that this statement was incorrect although the fact that such motions were made was discovered only upon a close re-examination of the numerous docket entries of the trial court. The stenographic transcript, then before us, of the proceedings below made no disclosure of such motions and the briefs filed in this court were strangely silent with respect thereto. In all fairness to counsel, however, we correct the error and we sincerely trust that he has suffered no professional embarrassment or undeserved criticism.

Despite the erroneous factual recital, we conclude that the result reached in the foregoing opinion should not be disturbed.

In Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933), the Court stated the rule to be applied in determining whether the District Court had erred in refusing to grant a new trial. "The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals." 287 U.S. 481, 53 S.Ct. 254 (footnotes omitted).

In DeFoe v. Duhl, 286 F.2d 205 (4 Cir. 1961), this court quoted with approval and adopted the Virginia rule as to when the jury's determination of the amount of damages should be set aside. We quoted from Williams Paving Company v.

Kreidl, 200 Va. 196, 104 S.E.2d 758, 764 (1958):

" * * *. The determination of the quantum of damages in this character of action is peculiarly within the province of the jury, but its authority to fix the amount of damages is not arbitrary or unlimited. Yet if the amount awarded is not so out of proportion to the injury and loss suffered as to evince prejudice, partiality or corruption by the jury or show that it was actuated by a mistaken view of the merits of the case, then the award should not be disturbed. * * *."

In *DeFoe*, plaintiff, who had suffered personal injuries in a fall, was awarded a jury verdict of $699.00. She appealed from the District Court's refusal to grant a new trial on the ground that the verdict was inadequate. Plaintiff proved out-of-pocket medical expenses of $624.-30. However, there was a serious conflict in the medical testimony and several witnesses observed her walking up and down stairs the day after the accident. We held: "The verdict here is not so shockingly low in light of the conflicts in the testimony as to lead to the conclusion that it was based upon passion or prejudice or some misconception of the facts or of the law." 286 F.2d at 207 (citations omitted).

In the instant case there was also a conflict as to the extent of Newby's injuries. This is not a case where the jury returned a verdict for less than the amount established by undisputed evidence. See Devine v. Patteson, 242 F.2d 828 (6 Cir. 1957); Reisberg v. Walters, 111 F.2d 595 (6 Cir. 1940); Miller v. Maryland Casualty Co., 40 F.2d 463 (2 Cir. 1930). Where the amount of damages is in dispute, as in this case, it has been held that the appellate court should refrain from disturbing the trial court's denial of a motion for new trial. See Still v. Townsend, 311 F.2d 23, 25 (6 Cir. 1962). We conclude that the court below did not abuse its discretion in refusing to grant a new trial and its judgment will not be disturbed.

In view of this court's recognition of an incorrect understanding of a procedural fact and the reconsideration of its original decision upon being apprised of the error, it is unnecessary that the case be fully reheard.

The petition for rehearing will be denied.