George GARRETT, Plaintiff,

v.

Enso GUTZEIT O/Y, Defendant and Third-Party Plaintiff,

v.

TIDEWATER STEVEDORING CORPORATION, Third-Party Defendant.

Civ. A. No. 75–71–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

July 17, 1974.

Sidney H. Kelsey, Norfolk, Va., for plaintiff.

Charles F. Tucker, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for defendant and third-party plaintiff.

L. Shields Parsons, Parsons, Steffen & Moore, Norfolk, Va., for third-party defendant.

## MEMORANDUM

WALTER E. HOFFMAN, District Judge.

There remains in this case the determination of the third-party controversy between the shipowner and stevedore following the reversal of this Court's action in setting aside a jury verdict in favor of the plaintiff against the shipowner, and in entering judgment in favor of the shipowner. Garrett v. Gutzeit O/Y, 491 F.2d 228 (4 Cir. 1974). The judgment entered on the jury verdict in the sum of $45,000, plus interest and costs, including appellate costs, was ultimately satisfied by the shipowner who seeks indemnity for the amount paid to Garrett, the longshoreman who was injured on January 7, 1971 while employed by Tidewater Stevedoring Corporation.[1]

---

1. The record does not reflect the precise amount paid. Presumably the entire judgment, interest and costs were paid with Garrett reimbursing his employer for amounts

■ Tidewater, pursuant to contract, was in entire charge of the unloading operation. True, the shipowner retains the ultimate authority to stop the work and cannot delegate the responsibility for unseaworthiness of the vessel to the stevedore insofar as the injured party is concerned.

■ As noted, Garrett's claim was tried to a jury. By agreement the third-party action was to be determined by the Court following the final decision on the jury verdict. Tidewater contends that the Court is at liberty to make new findings, and perhaps reach a different result, with respect to the factual matters submitted to the jury.

Such a construction as urged by Tidewater would be contrary to the indemnity theory upon which the shipowner seeks a recovery. The word "indemnity" means "security or protection against hurt or loss or damage." It is used in the sense of giving security, such as a bond, all of which is not involved in this case. It is also used in the sense of compensation for actual damage which is here involved. Indemnity is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other. It implies a primary or basic liability in one person, although a second is also liable with the first to a third, the discharge of the obligation by the second person leaving him with a right to secure compensation from the one who, as between themselves, is primarily liable. 41 Am.Jur.2d, Indemnity, ¶ 1, p. 687.

It is uncontradicted that the shipowner owed the duty to Garrett to provide a seaworthy vessel, including the unloading processes used by the stevedore. It is agreed that Tidewater and the shipowner had entered into a contract whereby Tidewater was to unload the vessel as the expert stevedore. The issue of the shipowner's negligence was removed from jury consideration and the jury, by its verdict, found the vessel to be unseaworthy because of the ultimate condition of its cargo. We hold that, in such a situation as here presented, the Court cannot go back of the jury verdict, approved on appeal, and make new findings with respect to seaworthiness.

Tidewater relies in part on a reference in 46 Am.Jur. (2d), ¶ 561, p. 723, beginning with the sentence "On the other hand . . ." The difficulty is that the reference is incomplete. Preceding the reference by Tidewater, the following appears:

> The conclusiveness of a judgment as against a person liable over to the judgment debtor extends to facts established or necessarily adjudicated in the first action, insofar as the issues litigated therein are identical with the issues involved in the subsequent action. The judgment is conclusive proof in the second action that the judgment creditor had a cause of action, that he was not guilty of contributory negligence, that there were no other defenses to the action, that he suffered damage to the amount of the judgment, and, in general, that the defendant in the first action was liable to the plaintiff therein.

■ As we view this controversy the only remaining issue is whether Garrett's injury and the resulting judgment was occasioned by the breach of the warranty of workmanlike service by Tidewater. Mere concurrent fault on the part of the shipowner and stevedore is not enough to defeat a recovery in an action brought by the shipowner unless the shipowner's fault is such that it prevents or seriously handicaps the stevedore in his ability to do his workmanlike job. Albanese v. Nederl. Amerik Stoomv. Maats., 346 F.2d 481 (2 Cir. 1965).

---

received under the Longshoremen's and Harbor Workers' Compensation Act. The Court assumes that counsel will be able to agree as to the specific amount to be included in the third-party judgment.

The case of Evans v. Carolina Shipping Company, 451 F.2d 188 (4 Cir. 1971), is essentially the same as exists in the present controversy. In *Evans*, a settlement was effected between the injured longshoreman and the shipowner. The third-party claim was tried to the court under the theory of a breach of an implied warranty to perform the unloading operation in a safe and workmanlike manner. As in the present case, the unloading was accomplished by the use of hooks attached to metal bands binding the bales and, several hours prior to the accident, the stevedore knew or should have known that the customary method of unloading was being improperly pursued *or* that it was an unsafe method to pursue under the particular facts of the case, or both.

■■ The evidence presented to the jury clearly demonstrated that the use of the bale hook method in discharging cargo was resulting in some of the wire bands breaking, and that Tidewater made no attempt to determine why the bands were breaking. When a stevedore is aware of a defective condition before the accident, the stevedore is under an obligation to correct the condition or suspend its operations. Compania Transatlantica Espanola, S. A. v. Melendez Torres, 358 F.2d 209 (1 Cir. 1966); Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, 386 F.2d 193 (4 Cir. 1967); Mosley v. Cia. Mar. Adra., S. A., 362 F.2d 118 (2 Cir. 1966); Villain & Fassio E. Compagnia v. Atlantic & Gulf Stevedores, Inc., 283 F.Supp. 725 (E.D.Va.1968). The warranty is breached when the stevedore's negligence does no more than call into play the unseaworthiness of the vessel. Crumady v. J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

In the jury case, there was evidence as to bands breaking in the unloading process before the bales hit the dock; there was proof that the stevedore superintendent had given instructions that bales coming off the ship with more than one band broken were to be set aside to be recoopered after the ship had been discharged; there was proof that the bale causing the accident had only two bands or wires, whereas it was supposed to have four. Apparently the stevedore superintendent's instructions were disregarded and the bale was handled and placed in the stow with only two bands or wires around it. When one of the two bands gave way, Garrett was injured.

■ As far as the vessel is concerned, while we concede that the master or mate can always stop the unloading, the shipowner was entitled to rely upon the expertise of the stevedore under the facts of this case. There is no evidence that the shipowner placed the bands around the bales, nor that the bands were *improper for the cargo being carried*. The mere failure to supervise the stevedore's work is an untenable defense in an indemnity action. Garrett's injuries were sustained while attempting to stow a bale in a nearby warehouse and the shipowner's alleged failure to provide a safe place to work is wholly frivolous in an action by the shipowner against the stevedore.[2] Equally without merit is Tidewater's contention that the shipowner failed to provide instructions and information as to the nature of the bale bands. If any of the foregoing are a part of the duty of the shipowner, there would be no need to retain the services of the expert stevedore. A judgment order in favor of the shipowner against Tidewater Stevedoring Corporation will be entered upon presentation and endorsement by counsel. The Court assumes that counsel will agree as to the reasonable value of attorneys' fees and the actual expenses incurred. Interest on the total amount paid by the shipowner to Garrett shall run from the date of payment of the judgment to Garrett.

---

2. Tidewater's standing contract provided that Tidewater was obliged to move the cargo from the dock to the place of stowage.